AMERICAN INVESTORS
LIFE INSURANCE COMPANY *v.*
TCB TRANSPORTATION, INC., an Arkansas
Corporation, James Dunn, Laverne Howard,
Terry Howard, Eugene E. Howard, Jr., David
Meadows, James Sullins, Beverly Turner, and
Roger D. Watson

92-1084                                    849 S.W.2d 509

Supreme Court of Arkansas
Opinion delivered March 22, 1993
[Rehearing denied May 3, 1993.*]

*Skokos, Coleman & Rainwater, P.A.*, by: *Jay Bequette* and *Randy Coleman*, for appellant.

---

*Glaze, Corbin, and Brown, JJ., would grant rehearing.

*James A. McLarty*, for appellee.

DAVID NEWBERN, Justice. The issue in this appeal is whether a Chancellor who has determined the Chancery Court lacks jurisdiction of a suit begun there may enjoin the parties to retain the status quo until the merits of the case are decided in a Circuit Court. We hold a Chancellor has the authority to do so if it appears that the remedy at law might otherwise be inadequate.

American Investors Life Insurance Company (American Investors), the appellant, provided health insurance to employees of appellee TCB Transportation, Inc. (TCB). Premiums were paid by individual employees through withholdings from wages. A dispute arose over late payment of the past-due medical bills of · Steve Turner who was an insured under the policy as the spouse of one of the TCB owners. Turner had contracted Hodgkins disease. A notice of cancellation of the policy was sent by Fewell & Associates, administrator for American Investors, to the Turners.

TCB and its eight employees sought an injunction in Jackson County Chancery Court requiring that insurance coverage be continued until a determination could be made whether cancellation was proper. The petition alleged irreparable harm would result if coverage was terminated because the cost of replacing Steve Turner's health insurance, assuming replacement coverage could be obtained, would increase by over 200%.

A consent order was entered in which Fewell & Associates agreed to withdraw its notice of cancellation and continue coverage until the action could be determined on the merits. TCB's petition for an injunction was held in abeyance.

American Investors moved for summary judgment, arguing TCB and its employees were no longer qualified to be insured under the terms of the group policy and, therefore, cancellation was proper. The motion also requested that the petition for injunctive relief be dismissed or transferred to Circuit Court as there was an adequate remedy at law for breach of contract.

In response, TCB argued there were material questions of fact presented as to whether cancellation was proper. TCB recognized, however, that the case involved breach of contract issues and that the Chancellor should not decide them on the merits. TCB thus had no objection to transferring the claims to

Circuit Court provided the prior consent order remained in effect pending the outcome of the litigation.

The Chancellor denied the summary judgment motion and transferred the case to the Circuit Court, stating he lacked subject matter jurisdiction. The consent order was left in effect, and American Investors was ordered to maintain coverage for TCB and its employees pending a final determination in the Circuit Court.

A common function of a temporary restraining order or a preliminary injunction is to maintain the status quo until the merits of a controversy are decided. *See Citizens' Pipeline* v. *Twin City Pipeline*, 183 Ark. 1006, 39 S.W.2d 1017 (1931). In some instances we have observed that a Chancery Court entered a temporary order to preserve the status quo although the merits of an underlying controversy were to be decided in a Circuit Court. *Mills* v. *Patton*, 233 Ark. 755, 346 S.W.2d 689 (1961); *Coffelt* v. *Nicholson*, 224 Ark. 176, 272 S.W.2d 309 (1954); *Special School Dist. No. 58* v. *Deason*, 181 Ark. 208, 255 S.W.2d 23 (1930).

A party must show lack of an adequate remedy at law to obtain relief in equity, *Compute-A-Call* v. *Tolleson*, 285 Ark. 355, 687 S.W.2d 129 (1985); however, in *Honor* v. *Yamuchi*, 307 Ark. 324, 820 S.W.2d 267 (1991), we stated, "Regardless of whether the appellant is entitled to bring an action of law, the mere existence of that right does not deprive the equity court of jurisdiction unless the legal remedy is clear, adequate and *complete* [emphasis in original]."

We hear chancery cases de novo, and we may affirm if we find the result reached by the chancellor was correct for any reason. *May* v. *Bob Hankins Distributing Co.*, 301 Ark. 494, 785 S.W.2d 23 (1990). We lack assurance that the remedy for breach of contract is complete in this situation. If Turner or some other insured were denied health care as a result of inability to pay it might not matter at all whether there was a remedy in contract, for it could prove to be wholly inadequate.

It was not improper for the Chancellor to transfer the case to the Circuit Court. Nor do we find error in his order requiring temporary maintenance of the insurance coverage in view of our

conclusion that the remedy at law would otherwise have been incomplete.

Affirmed.

GLAZE, CORBIN, and BROWN, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. "Good results make bad law." It is a statement I have heard time and time again in my experiences as an appellate judge. The majority opinion issued today lends truth to the statement, so much so that it compels me to dissent.

Consistently with other results-oriented opinions of this court, the majority opinion issued today jumps to an unfounded conclusion. In this particular case, that unfounded conclusion is that appellee Steve Turner does not have an adequate remedy at law. There is absolutely nothing in the record that can be used to support this conclusion. The conclusion requires speculation on the majority's part and I am unwilling to join in that speculation.

The majority opinion states that *if* appellant is unable to receive health care, his remedy at law for breach of contract could prove to be wholly inadequate (emphasis added). I completely agree with the statement, even as it is written in its conditional form. I also agree that the mere existence of a remedy at law is not sufficient to deprive equity of its jurisdiction if the remedy is inadequate. *Honor* v. *Yamuchi*, 307 Ark. 324, 820 S.W.2d 267 (1991). What I disagree with, is that there is any evidence in the record even remotely indicating that appellee Steve Turner will be unable to receive health care if he is uninsured. That evidence is simply not there. And even reviewing this case *de novo*, this court cannot create such evidence or overlook its absence. Moreover, appellee does not *allege* that he will not be provided with health care. The majority opinion is therefore based on an allegation that was not even raised in the trial court, much less ruled upon, or even argued for the first time on appeal.

Even worse than the majority opinion's unfounded conclusion that appellee Steve Turner's remedy for breach of contract could be inadequate however, is the reasoning used to reach it. The opinion reasons, "[w]e lack assurance that the remedy for breach of contract is complete in this situation." If the majority lacks such assurance, I ponder the question of just whose burden

it was to supply such assurance by producing evidence. As the parties seeking the injunction, it was appellees' burden. *See generally W.E. Long Co.* v. *Holsum Baking Co.*, 307 Ark. 345, 820 S.W.2d 440 (1991); *Dunkum* v. *Moore*, 265 Ark. 544, 580 S.W.2d 183 (1979); *Arkansas State Bd. of Pharmacy* v. *Troilett*, 249 Ark. 1098, 463 S.W.2d 383 (1971); *Green* v. *Smith*, 231 Ark. 94, 328 S.W.2d 357 (1959); *Flippin* v. *McCabe*, 228 Ark. 495, 308 S.W.2d 824 (1958); *Arkansas State Bd. of Architects* v. *Clark*, 226 Ark. 548, 291 S.W.2d 262 (1956); *Van Norman* v. *Reynolds*, 177 Ark. 798, 9 S.W.2d 39 (1928).

Granted, appellee Steve Turner does allege, in the original petition for injunction, that if appellant cancels his health insurance, he would suffer irreparable harm because replacement insurance, assuming it would cover pre-existing conditions, would raise costs "200/300%." This is all he alleges, however; he never alleges he will be denied health care. In addition, he did not offer the trial court any evidence of the alleged increase in costs. There was not a single allegation, witness, or affidavit offered to the effect that appellant inquired about obtaining replacement insurance. Whether an insurance company would insure a person diagnosed with Hodgkin's disease and at what cost is a matter of which neither this court nor the trial court should take judicial notice. Most important though, is that the allegation that appellant's cost of insurance would rise can be remedied adequately by money damages in circuit court should it be ultimately determined that appellant wrongfully terminated appellees' coverage.

Putting the procedural defect in the majority opinion aside, I now turn to the more significant substantive defect — the complete disregard for the separation of equity courts and law courts in our system of jurisprudence.

On appeal, appellant argues the chancellor erred in finding a lack of subject matter jurisdiction and subsequently ordering appellant to maintain coverage of appellees. I agree with this contention. I agree because it is well settled that a lack of an adequate remedy at law is at the foundation of the power to issue injunctive relief. *Compute-A-Call, Inc.* v. *Tolleson*, 285 Ark. 355, 687 S.W.2d 129 (1985). Thus, the chancellor's finding that appellees had an adequate remedy at law for breach of contract

extinguished the chancery court's power to issue injunctive relief. The finding of an adequate remedy at law is wholly inconsistent with the issuance of an injunction.

The majority tries to reconcile this inconsistency by citing three cases in which this court has "observed" a chancery court issuing an injunction when a circuit court ultimately decided the merits of the case. After reading the three cases cited by the majority, it is obvious why the majority carefully chose the word "observed." Indeed, this court did make the described observation in the three cited cases, but it expressed its approval of such actions in only one of those cases, *Mills* v. *Patton*, 233 Ark. 755, 346 S.W.2d 689 (1961), which was expressly limited to the facts of that case. In *Coffelt* v. *Nicholson*, 224 Ark. 176, 272 S.W.2d 309 (1954), this court merely observed that a chancery court issued an injunction which was abandoned when the petitioner's attorneys concluded circuit court was the appropriate forum; the order appealed from and affirmed in that case was an order of the circuit court. In *Special School Dist. No. 50* v. *Deason*, 181 Ark. 208, 255 S.W.2d 23 (1930), this court expressly reserved comment on the propriety of the chancery court's jurisdiction because the issue was not raised by the parties.

It is true that this court expressed approval of a chancery court issuing an injunction when a circuit court decided the merits of the case in *Mills*, 233 Ark. 755, 346 S.W.2d 689. *Mills* does directly discuss the "power of equity to grant an injunction in a case like this." A key factor, however, is that *Mills*, and the cases on which *Mills* relies, are cases contesting the eligibility of a public official to hold office. Thus, the holding in *Mills* regarding a chancery court's power to issue an injunction is expressly limited to cases involving a challenge to a public official's eligibility to hold office. The most important factor in explaining *Mills'* inapplicability to the current case, however, is that, unlike the chancery court in the present case, the chancery court in *Mills* did not make an express finding that it lacked subject matter jurisdiction.

GLAZE and BROWN, JJ., join in this dissent.